UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

GEORGE MCPHATTER, JR.,

                         Plaintiff,

      v.                                                                         7:06-cv-0914

ROBERT GILBO, MARK MULLER,
TROOPER SARAH LUTZ individually and
in her official capacity,

                         Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THOMAS J. McAVOY
Senior United States District Judge

## DECISION and ORDER

        Plaintiff George McPhatter, Jr., commenced the instant action asserting various claims arising out of his arrest and prosecution. Presently before the Court is Defendant New York State Trooper Sarah Lutz's motion for summary judgment pursuant to Fed. R. Civ. P. 56 seeking dismissal of the Complaint in its entirety.

**I.    FACTS[1]**

        On March 4, 2004, Lutz was assigned to investigate a complaint of larceny and menacing at 25 Elliot Road in Hopkinton, New York. Upon arriving at 25 Elliot Road, Lutz interviewed Defendant Robert Gilbo, who resided there. Gilbo informed Lutz that he noticed that approximately $300 worth of lumber had been removed from his property. Gilbo further

---

[1] Because Plaintiff failed to submit a proper Statement of Material Facts supported by citations to the record as is required by Local Rule 7.1(a)(3), the following facts are taken from Defendant Lutz's properly supported Statement of Material Facts and are deemed to be true. See N.D.N.Y.L.R. 7.1(a)(3).

stated that he knew that Plaintiff, George McPhatter, who resided at 580 ST-458, St. Regis Falls, New York, took the lumber.  The basis for Gilbo's statement in this regard was that he observed the missing lumber on a trailer in Plaintiff's driveway.  Gilbo further stated that he went to Plaintiff's residence where he and Plaintiff exchanged words.  Gilbo told Lutz that, during the course of the verbal exchange, Plaintiff threatened Gilbo with a shotgun.

   Lutz also interviewed Defendant Mark Muller.  Muller stated that he accompanied Gilbo to Plaintiff's residence.  Muller confirmed that the missing lumber was on a trailer on Plaintiff's property and that the three men (Gilbo, Muller, and Plaintiff) got into a verbal argument.  According to Plaintiff, Muller and Gilbo called him a "nigger".  Plaintiff claims that Muller and Gilbo's speech was so offensive and threatening that it invoked a defensive response from him.  Muller reported to Lutz that Plaintiff pointed a shotgun at he and Gilbo.

   Lutz then interviewed Debra Hade, who also resided at 25 Elliot Road.  Hade advised that she was also at Plaintiff's residence and witnessed Plaintiff pointing a shotgun at Gilbo and Muller.

   Lutz obtained supporting depositions from each of Gilbo, Muller, and Hade.  The supporting depositions reaffirmed what each witness had stated to Lutz during the interview process.  Lutz then proceeded to Plaintiff's home to interview him.  When she arrived, nobody was home.  Lutz relayed the status of her investigation to Senior New York State Investigator Charles Bishop.  Bishop directed Lutz to arrest Plaintiff.

   On March 8 and March 9, 2004, Lutz unsuccessfully attempted to locate and interview Plaintiff.  On March 10, Lutz completed an information charging Plaintiff with Menacing in the Second Degree.  Lutz also filled out portions of an appearance ticket, but left

the date and time that Plaintiff was to appear in town court and the date the ticket was issued blank for the arresting officer to complete.

On March 10, New York State Trooper Peter Kraengel located Plaintiff at his residence and transported him, and his shotgun, to the state police barracks. Kraengel completed and issued the appearance ticket, issued Plaintiff a property receipt for the shotgun, and processed Plaintiff.

In June 2005, a jury acquitted Plaintiff of the offense of Menacing in the Second Degree. Thereafter, Plaintiff commenced the instant action alleging violations of his constitutional rights. Currently before the Court is Defendant Lutz's motion for summary judgment pursuant to Fed. R. Civ. P. 56 seeking dismissal of the Complaint in its entirety.

## II.     DISCUSSION

### a.     Standard of Review

Rule 56 of the Federal Rules of Civil Procedures governs motions for summary judgment. It is well settled that on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the non-moving party, see Tenenbaum v. Williams, 193 F.3d 581, 593 (2d Cir. 1999), and may grant summary judgment only where "there is no genuine issue as to any material fact . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56( c). An issue is genuine if the relevant evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). A party seeking summary judgment bears the burden of informing the court of the basis for the motion and of identifying those portions of the record that the moving party believes demonstrate the absence of a genuine issue of material fact as to a dispositive issue. Celotex Corp. v. Catrett, 477 U.S. 317, 323

(1986). If the movant is able to establish a prima facie basis for summary judgment, the burden of production shifts to the party opposing summary judgment who must produce evidence establishing the existence of a factual dispute that a reasonable jury could resolve in his favor. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). A party opposing a properly supported motion for summary judgment may not rest upon "mere allegations or denials" asserted in his pleadings, Rexnord Holdings, Inc. V. Bidermann, 21 F.3d 522, 525-26 (2d Cir. 1994), or on conclusory allegations or unsubstantiated speculation. Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998). With this standard in mind, the Court will address Defendant's motion.

### b.     Fourth Amendment False Arrest/False Imprisonment Claim

Plaintiff contends that he was falsely arrested by Lutz. A Fourth Amendment false arrest claim/false imprisonment fails as a matter of law if, at the time of the seizure, the arresting officer had probable cause to make an arrest. Jocks v. Tavernier, 316 F.3d 128, 135 (2d Cir. 2003); Smith v. Edwards, 175 F.3d 99, 105 (2d Cir. 1999). "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." Devenpeck v. Alford, 125 S. Ct. 588, 593 (2004)(citing Maryland v. Pringle, 540 U.S. 366, 371 (2003)). Probable cause exists when officers "have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." Posr v. Court Officer Shield No. 207, 180 F.3d 409, 414 (2d Cir. 1999). The relevant inquiry is whether "probable cause existed to arrest a defendant" and "it is not relevant whether probable cause existed with respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer at the

time of arrest." Jaegly v. Couch, 439 F.3d 149, 154 (2d Cir. 2006).  "A probable cause determination does not require proof beyond a reasonable doubt; it is the mere probability of criminal activity, based on the totality of the circumstances, that satisfies the Fourth Amendment." Hahn v. County of Otsego, 820 F. Supp. 54, 55 (N.D.N.Y. 1993), aff'd, 52 F.3d 310 (2d Cir. 1995).  "[T]he eventual disposition of the criminal charges is irrelevant to the probable cause determination." Hahn, 820 F. Supp. at 55 (citing Pierson v. Ray, 386 U.S. 547, 555 (1967)).

"It is well-established that a law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness." Martinez v. Simonetti, 202 F.3d 625, 634 (2d Cir. 2000) (quoting Miroslavsky v. AES Eng'g Soc'y, 808 F. Supp. 351, 355 (S.D.N.Y.1992), aff'd 993 F.2d 1534 (2d Cir. 1993)).  "If policemen arrest a person on the basis of a private citizen's complaint that if true would justify the arrest, and they reasonably believe it is true, they cannot be held liable . . . merely because it later turns out that the complaint was unfounded." Lee v. Sandberg, 136 F.3d 94, 103 (2d Cir. 1997); see Calderola v. Calabrese, 298 F.3d 156, 165 (2d Cir. 2002)("[W]hen an average citizen tenders information to the police, the police should be permitted to assume that they are dealing with a credible person in the absence of special circumstances suggesting that might not be the case.").  Police officers may also rely upon information gained from other officers in making their probable cause assessment. See Savino v. City of N.Y., 331 F.3d 63, 74 (2d Cir. 2003).  Once a police officer has probable cause, he need not explore "every theoretically plausible claim of innocence before making an arrest." Ricciuti v. New York City Transit Authority, 124 F.3d 123, 128 (2d Cir. 1997); Hotaling v. LaPlante, 67 F. Supp. 2d 517, 522 (N.D.N.Y. 2001)(valid probable cause to arrest rested upon information

supplied by an identified witness, and even though a further investigation by the Trooper would have led to a contradictory conclusion, Trooper's conduct was not unreasonable under the circumstances).

Where the facts surrounding the arrest are uncontroverted, the determination as to whether probable cause existed may be made by the Court as a matter of law. Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996). Even where factual disputes exist, a § 1983 claim may fail if the plaintiff's version of events is sufficient to establish probable cause to arrest. Mistretta v. Prokesch, 5 F. Supp.2d 128, 133 (E.D.N.Y. 1998).

Here, Lutz acted with probable cause. She had statements from the two purported victims (Gilbo and Muller) that Plaintiff pointed a shotgun at them. She also had a statement from a third person (Hade) who claimed to have witnessed Plaintiff point a shotgun at Gilbo and Muller. These facts provided a reasonable basis for Lutz to believe that Plaintiff violated New York Penal Law § 120.14(1) (A person is guilty of Menacing in the Second Degree when he "intentionally places or attempts to place another person in reasonable fear of physical injury, serious physical injury or death by displaying a deadly weapon, dangerous instrument, or what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm."). Alternatively, based on the information concerning the missing lumber, there was probable cause to believe that Plaintiff committed a larceny, see N.Y. Penal Law §§ 155.05; 155.25. There is insufficient evidence suggesting that Lutz had reason not to believe Giblo, Muller or Hade concerning the lumber or the shotgun. Accordingly, the false arrest/false imprisonment claims are dismissed.[2]

---

[2] The record further demonstrates that it was Trooper Kraengle who physically arrested
(continued...)

### c. Malicious Prosecution

Plaintiff also asserts a claim of malicious prosecution. "The elements of a malicious prosecution claim under New York law are '(1) that the defendant initiated a prosecution against the plaintiff, (2) that the defendant lacked probable cause to believe the proceeding could succeed, (3) that the defendant acted with malice, and (4) that the prosecution was terminated in the plaintiff's favor.'" Rohman v. New York City Transit Auth 215 F.3d 208, 215 (2000) (quoting Posr v. Court Officer Shield # 207, 180 F.3d 409, 417 (2d Cir. 1999)). For reasons similar to those discussed with respect to the false arrest/false imprisonment claim (namely that Lutz had probable cause to charge Plaintiff with a violation of N.Y. Penal Law § 120.14(1) (menacing) or § 155.25 (larceny), the malicious prosecution claim must be dismissed. The dismissal of this claim is further supported by the lack of sufficient evidence from which a fair-minded trier of fact could reasonably conclude that Lutz acted with malice.

### d. Excessive Force

Plaintiff also asserts claims of the use of excessive force. The undisputed evidence before the Court is that Trooper Kraengel, and not Defendant Lutz, arrested Plaintiff. Because Lutz was not personally involved in any claimed use of excessive force, the claim against her must be dismissed. Farrell v. Burke, 449 F.3d 470, 484 (2d Cir. 2006) ("It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983 .") (quoting Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994)). Furthermore, there is no evidence in the

---

[2](...continued)
Plaintiff; not Lutz. This is another basis for dismissing the claim against Lutz.

record suggesting that the Troopers used an unreasonable amount of force in effectuating Plaintiff's arrest.  See Jones v. Parmley, 465 F.3d 46, 62 (2d Cir. 2006) (noting that claims of the use of excessive force should be analyzed under the reasonableness standard of the Fourth Amendment).  Accordingly, the excessive force claim against Lutz is dismissed.

### e.     Equal Protection, 42 U.S.C. §§ 1985 and 1986 Claims

Plaintiff also alleges a violation of the Equal Protection Clause.  There is no evidence in the record tending to suggest that Lutz initiated the criminal charge against Plaintiff because of his race or any other protected trait.  The Equal Protection claim must, therefore, be dismissed.  For this same reason - the lack of evidence suggesting a racial or otherwise class-based motive - Plaintiff's claim brought pursuant to 42 U.S.C. § 1985 also must be dismissed.  See Cine SK8, Inc. v. Town of Henrietta, 507 F.3d 778, 791 (2d Cir. 2007) ("A § 1985(3) 'conspiracy must . . . be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action.'") (quoting Thomas v. Roach, 165 F.3d 137, 146 (2d Cir.1999)).

Plaintiff's claim brought pursuant to 42 U.S.C. § 1986 is time-barred by the one year statute of limitations.  42 U.S.C. § 1986.  Plaintiff was arrested in March 2004, but did not commence this action until July 2006.  Further, the lack of a valid § 1985 claim precludes a § 1986 claim.  Baines v. Masiello, 288 F. Supp.2d 376, 395 (W.D.N.Y. 2003).  Accordingly, the § 1986 claim is dismissed.

### f.     Official Capacity Claims

To the extent Plaintiff seeks to recover money damages against Lutz in her official capacity, such claims are precluded by the Eleventh Amendment.  Will v. Mich. Dep't of State Police, 491 U.S. 58, 71, 109 S. Ct. 2304 (1989).

### g. State Law Claims

Lastly, to the extent Plaintiff asserts any state law causes of action other than false arrest, false imprisonment, or malicious prosecution (which claims have been disposed of), the Court declines to exercise supplemental jurisdiction over any such claims.

## III. CONCLUSION

For the foregoing reasons, Defendant Lutz's motion for summary judgment is GRANTED and the Complaint is DISMISSED as to her in her individual and official capacities.

In light of the above discussion concerning the § 1985 claim (which is the only claim asserted against Defendants Gilbo and Muller), the Court's prior decision concerning Plaintiff's motion for a default judgment against Gilbo and Muller, and the disposition of the other constitutional claims, **the § 1985 claim against Defendants Gilbo and Muller *will be dismissed without further action by the Court* unless, *within fourteen days of the date of this Order*, Plaintiff submits evidence, admissible in form, upon which a fair-minded trier of fact could reasonably find the existence of a § 1985 conspiracy.**

IT IS SO ORDERED.

Dated: January 16, 2008

*Thomas J. McAvoy*
Thomas J. McAvoy
Senior, U.S. District Judge